## Case No. 13,898.

### THOMAS v. GRAY.

[1 Blatchf. & H. 493.] [1]

District Court, S. D. New York.    Feb. 12, 1836.

PLEADING IN ADMIRALTY—SUPPLEMENTAL LIBEL—ANSWER—REPLICATION—WAGES—DAMAGES FOR ASSAULT—COSTS.

1. Where a supplemental libel is filed before the process is returnable, it becomes part of the pleadings, without further notice to the respondent, and he is bound to answer it.

2. When the respondent has been arrested in a suit in personam, the answer is not filed, within the meaning of the eighteenth rule, until bail is perfected.

3. Where a replication is not filed within the time required by the rules of court, the respondent will be held to have waived the benefit of the rules in that respect, unless he takes advantage of the point when evidence is offered at the hearing.

4. Courts of admiralty do not encourage suits in personam, for personal torts committed upon tide-waters within the ports and harbors of a state.

1 [Reported by Samuel Blatchford, Esq., and Francis Howland, Esq.]

5. Aliter, when a tort committed upon tide-waters gives a right of action in rem, or when a tort is not the sole cause of action, but is connected with other matters which are within admiralty cognizance.

[Cited in The Guiding Star, 1 Fed. 349.]

6. Where a seaman, before his period of service is ended, is imprisoned by the local authorities in a home port, on a well-founded charge of mutinous conduct, the master is not liable for the seaman's wages which accrue during the time of his imprisonment.

7. Such imprisonment may, however, be deemed an adequate punishment for the offence, and prevent a subtraction of the wages earned prior to the imprisonment.

8. If several distinct causes of action are united in the same libel, the costs may be distributed, and each party may recover costs on those branches of the action in which he succeeds.

9. In a libel to recover wages and also damages for an assault, where the claim to wages was sustained, but the claim to damages for the assault was dismissed, the libellant recovered wages and costs, and the respondent also recovered costs, the two recoveries being set-off against each other, and execution being awarded to the party in whose favor the balance was found.

In admiralty. This was a libel in personam, by [William Thomas] a seaman against [Cadwallader Gray] a master for the recovery of wages, and of damages for an aggravated assault and wounding by shooting with a pistol. The libel was filed on the 5th of June, and the process sued out was returnable on the 7th of July. On the 25th of June, a supplemental libel, by way of amendment, was filed. The original libel set out a contract of hiring by the month, and claimed $32 and upwards as due for wages. The amended libel alleged, that the libellant had shipped for six months, and claimed wages for the whole period, on the ground that performance of the entire contract on the part of the libellant had been prevented by the misconduct of the respondent. The answer was filed on the 7th of July, and bail was put in on the 9th. On the 17th, a replication, in the usual form, was filed by the libellant. The evidence offered by both parties at the hearing, upon the issues raised by the pleadings, was full, and, in many respects, contradictory. It appeared that, when the vessel was in New York, the libellant had absented himself for a day or two previous to the 9th of April, and that, on the morning of that day, after the crew had breakfasted, he returned and placed himself in the way of the crew who were at work, and refused to work himself, unless breakfast was prepared for him. The respondent thereupon endeavored to put him out of the way, and was violently assaulted by the libellant. The respondent then went on shore and procured a police officer. On his return, the libellant, having armed himself with an iron marling-spike, fastened it to his arm with a lanyard, and went up the fore-rigging, threatening to take the life of any one who approached him. A number of persons having collected, the li-

bellant finally came down, and was taken to the police office, and afterwards to the hospital, in consequence of a wound received in the knee while he was in the rigging. A pistol was fired at the libellant, by the master before he came down, but the weight of evidence proved that the wound was the consequence of the libellant's own act in aiming a blow at the respondent with the marling-spike, which was suddenly brought up against the knee of the libellant by the jerk of the lanyard. The answer set up a forfeiture of the wages due to the libellant for his services prior to his imprisonment. A deposition of Tobias Guttridge was offered as evidence on the part of the libellant, and was objected to, on the ground that the witness was a resident of the city of New York, and was not proved to be absent at the time of trial. After the evidence was put in, the case stood over, for argument, to a subsequent term.

Alanson Nash, for the libellant.

I. The tort was committed on a vessel where the tide ebbed and flowed, and within the admiralty jurisdiction. Peyroux v. Howard, 7 Pet. [32 U. S.] 324, 343; U. S. v. Bevans, 3 Wheat. [16 U. S.] 336. The jurisdiction is, in this respect, the same in a civil suit for a tort as in a suit on a contract. McGrath v. The Candalero [Case No. 8,810].

II. Parties may file, by way of amendment, new allegations, not charging new and distinct causes of suit. Proceedings in admiralty are, in conformity with the ancient practice, supposed to be in open court, and the parties to be always present; and the amended libel was filed some days before the process was returnable or the answer was filed.

III. The answer cannot be considered as having been filed until the bail was perfected. The twentieth rule allows the libellant ten days to except to the answer, and the rule of October, 1833,[2] should be so construed as not to impair the right given by the twentieth rule. Accordingly, fourteen days must elapse after bail is perfected, before the libellant, by not filing a replication, can be held to have admitted the matters set up by the answer. Moreover, the objection that the replication is no part of the pleadings, if it ever existed, has been waived by the respondent; because, at the hearing, evidence was offered and depositions were read by both parties, for and against the allegations of the answer.

IV. The respondent is liable for wages for the full term of six months, since, by his own act, he prevented the libellant from fulfilling the contract on his part. Hoyt v. Wildfire, 3 Johns. 518; Emerson v. Howland [Case No. 4,441].

Washington Q. Morton, for respondent.

I. The offence, if any, was committed at a wharf, within the jurisdiction of the civil authorities, and whilst process from them was actually out to arrest the libellant. The case is, therefore, not within the admiralty jurisdiction, and the libel ought to be dismissed.

II. The case stands before the court upon the libel and answer alone. The amended libel is no part of the pleadings, the respondent having had no notice or knowledge of its having been filed.

III. The replication is no part of the pleadings, because the libellant did not file it within four days after the respondent's appearance was entered and his answer was put in, but suffered ten days to elapse. Therefore, under the rule of October, 1833, he should be held to have admitted the matters set up by the answer, and the testimony offered to contradict the allegations of the answer should be excluded.

IV. A master of a vessel may enforce obedience to his orders in port as well as at sea. The means used by the respondent were lawful and proper; and the same degree of misconduct which renders a seaman unfit to be taken to sea, justifies a master in putting him on shore, and forfeits all wages then due. 3 Kent, Comm. 181; Relf v. The Maria [Case No. 11,692].

BETTS, District Judge. Two objections of a preliminary character are taken on the part of the respondent—one as to the effect of the supplemental libel and the admissibility of proofs under the issue, as it is formed, and the other to the jurisdiction of the court with respect to the assault and wounding. The original libel was filed on the 5th of June On the 25th, an amendment was filed, introducing the allegations, that the libellant was compelled, by the cruel treatment of the master, to leave the vessel, and is, therefore, entitled to wages for the full period of six months. The original libel claimed that $32 and upwards were due for wages, over and above all just allowances. The answer was filed after the filing of the supplemental libel; and it is alleged by the respondent, that the answer was put in without notice that a supplemental libel had been filed. Proceedings in admiralty are deemed to be apud acta, in open court, and by authority of the court. Clerke, Praxis, Adm. tit. 19; Clerke's Eccl. Pr. tit. 31. The intendment of law is, that both parties thus have notice, in facie curiæ, of all processes in the cause, by the act of taking a step in it. When the warrant of arrest was returned

---

[2] This rule was as follows: "The matter set up by a sworn answer, responsive to the allegations or interrogatories of the libel, shall be deemed admitted on the part of the libellant, unless, within four days from the time the answer is filed, a replication is filed, or a written notice served on the proctor of the respondent, that on the trial of the cause proof will be offered on the part of the libellant, in opposition to the allegations of the answer." See The Mary Jane [Case No. 9,215].

·and called in court, the supplemental libel was duly on file, and a component part of the original. The answer then interposed must, accordingly, be taken as made to the entire libel. If the supplemental libel had been filed out of court, after the return of the process, and without notice to the respondent, it would be wholly nugatory, and could not now be used as part of the pleadings, unless the answer explicitly recognized and adopted it by replying to its averments. It will be of no ·practical importance to pursue the inquiry, in this instance, whether this amendment became part of the pleadings by being regularly in court, or by the recognition of the respondent. An issue upon the allegation that a specific sum and more was due, would justify the full latitude of proof admissible under the more direct and explicit averment, that six months' wages were due.

It is further insisted, that by the practice and the standing rules of the court, the libellant is precluded from offering proofs against the allegations of the answer, because his replication was not put in until ten days after the answer was filed. By a rule adopted in October, 1833, a libellant is held to admit the matters set up in the answer, if he does not, within four days after the answer is put in, file a replication thereto. See The Mary Jane [Case No. 9,215]. Under a sound construction of ·the eighteenth rule,[3] the answer cannot be regarded as put in or filed, until bail is perfected, that act being necessary to give a respondent a complete locus standi in the cause. The respondent .further insists, that the ten days allowed to a libellant, by the twentieth rule, to except to an answer, should be added to the four days, so that fourteen days must elapse after bail is perfected. before the statements of an answer can have effect as being admitted on the part of a libellant.[4] It appears to me, however, to be unnecessary to settle this point of practice in this case, for, admitting that the respondent had a right to claim the advantage given him by the rule of October, 1833, he has, by his own acts, unequivocally waived its application. On the hearing, the libellant read depositions previously taken in the cause, and gave oral proofs at large against the statements in the answer, without any objection on the part of the respondent that he was precluded, by the rule referred to, from controverting those statements. So, also, the respondent himself read a deposi-

tion filed by him on the 1st of September, and called and examined a number of witnesses to maintain his defence. The objection, that the replication was filed out of time and that the answer must be regarded as full proof, is first advanced at this term. to which time the cause stood over for argument. This is too late. Objections to the admissibility of evidence must be made when the proof is offered, or the party can never avail himself of them. 1 Starkie, Ev. pt. 2, p. 121. If the libellant has committed any irregularity in his proceedings, the objection must be brought forward in such manner as not to debar him of an opportunity of applying to the court for relief, by way of amendment or otherwise. It would be against every principle of sound practice, to allow the respondent, after he has permitted his adversary to continue proceedings and accumulate expenses in the suit, and upon an after thought, or upon a defect of form known to himself but concealed from his antagonist, to cause the testimony of the libellant to be rejected, and thus secure a decision of the cause upon his answer as the sole testimony. The testimony is, therefore, properly before the court; and it is not intended to intimate that the libellant, on the facts disclosed, would have been debarred from offering his proofs, if the objection to them had been made at the earliest opportunity after the replication was filed.

This court has heretofore, when it was practicable. avoided taking cognizance of causes of action arising within the harbors and territorial jurisdiction of the state, not strictly of a maritime character, and where the remedy would be merely coincident with that supplied at common law; although there is high authority sanctioning the jurisdiction in such cases. 2 Browne, Civ. & ·Adm. Law, 109; 3 Bl. Comm. 106; 2 Sir Leo. Jenkins, 774; Chamberlain v. Chandler [Case No. 2,-575]; Thorne v. White [Id. 13,989]. Suits in personam, founded on torts as the sole cause of action, have, therefore, not been adjudged sustainable in this court, unless the injury was received upon the high seas. See Borden v. Hiern [Id. 1,655]. But the present case is not so circumstanced, upon the facts and pleadings, as to demand an explicit judgment on that point. Proceedings in rem are sustained, when the cause of action is maritime in its nature, without regard to the locality of its origin. whether upon the high seas, or in bays or harbors where the tide ebbs and flows, or even on land. upon the acceptation that those cases are not embraced within the reservation, in the ninth section of the act of congress of September 24, 1789 (1 Stat. 77), of cases in which the common law affords an adequate remedy. But it may be essential to the jurisdiction of the court, particularly in suits for services, that the locality of the service and the nature of it should both be maritime. When the privilege of a lien on a vessel or on goods

---

[3] This rule was as follows: "No claim or answer shall be filed unless it shall be sworn to; and, in case of bailable process in personam, unless the party arrested appear. or put in bail according to the rules of the court. his claim or answer shall not be received by the court, but shall be treated as a nullity, and his defaults entered."

[4] By the eighty-eighth rule, the libellant now has "four days from the time the answer is perfected, or from the expiration of the time allowed for excepting thereto," within which to file his replication.

is accorded, this court, therefore, considers itself bound to afford suitors the aid of its remedies, without regard to considerations of local jurisdiction.

. A suit in admiralty, simply for an assault and battery, would take from a jury and leave to the discretion of a single judge, the determination of an allowance of damages, and would, in that respect, be a departure from a cardinal usage and principle of American jurisprudence; but I am by no means prepared to declare such a suit not to be within the lawful jurisdiction of this court. When a claim for damages for personal wrongs is connected, as an incident, with other matters properly appertaining to the cognizance of admiralty, it is the habit of the court to take jurisdiction of both causes of action; because the personal tort may well be inquired into, and damages, by way of compensation, be awarded, upon the same testimony, and thus the duplication of suits be avoided, and because the division of actions into stated formulas does not prevail in admiralty, and the rights of both the actor and the respondent are adjusted upon the whole case made, without regard to the denomination of the causes of action in pleadings at common law. But, if the tort be sued singly, as a substantive cause of action, the court, if not at liberty to reject the jurisdiction entirely, is careful to discourage appeals to its exercise, by every legitimate power. This claim for damages, in the present case, being coupled with a demand for wages, may properly be disposed of in this action, since all the proofs on both sides have been given without any exception having been taken, prior to the final hearing, to the jurisdiction of the court.

The objection to using Guttridge's deposition, because he is a permanent resident of the city, and has not been proved to be now absent, must prevail. On the examination of the deposition, however, it is not found to contain matter that would change the character of the cause in the libellant's favor, even if the court might disregard the objection to it or should open the cause for the purpose of receiving the viva voce examination of the witness.

(The opinion, after examining minutely the testimony of the various witnesses in the cause, proceeded:) Admitting that the libellant's proofs import that the libellant was wounded by the firing of the pistol into the rigging by the master, the witnesses stand so far contradicted and impeached by the general bearing of the whole evidence, that no safe reliance can be placed on their testimony, nor can any decree be properly rendered thereupon against the respondent. Even the fact of the wounding by a pistol shot is not affirmatively asserted by any witness. It is inferred, from the appearance of the injury when the libellant was under surgical treatment in the hospital, as proved by Dr. Stevens, and from the circumstances, that after the firing the libellant descended from the

23FED.CAS.—60

rigging bleeding in one of his knees and lame, and that, to an inquiry of some bystander, if he had been shot, he replied, in the presence of the respondent, that he had. Against this implication and presumption, there is the answer of the respondent, which may at least be received as evidence explanatory of the transaction, if not as substantive proof for the defence, and which positively denies the wounding; and there is also, more particularly, the testimony of several disinterested and unimpeached witnesses, who saw the libellant hit by the marling-spike when, in his attempt to strike the master with it, it was jerked back by the lanyard. Upon a careful consideration of the proofs in the case, I am of opinion that the libellant has not substantiated any cause of action against the respondent for a personal tort.

The conduct of the libellant towards the respondent on board the vessel, on the morning referred to in the pleadings and proofs, is fully proved to have been insubordinate to an extreme degree. Not only was his language insolent, and his behavior generally disorderly and disobedient, but he seized the master in a manner and with a state of temper which indicated a mutinous purpose, and might authorize his arrest for that offence. His conduct was so violent and refractory that the master was well justified in calling in the civil authority to control and punish him. The libellant was taken out of the vessel by process of law, and whether that was afterwards prosecuted or not will not vary the rights of the respondent, since he establishes an adequate cause for resorting, in the first instance, to the aid of the authorities. After the libellant obtained his release from that arrest, he was put into the hospital, being disabled by his wound from doing duty on ship-board, and never again joined the vessel or offered to do so. Therefore, he cannot charge that detention against the respondent, it being already shown that the respondent is not answerable for the wound itself. And, as the commitment of the libellant, in a home port, to the custody of the civil authority, to answer for a breach of the peace and for acts of personal violence to the master, was justifiable, there is no ground for the claim to wages during the period of that confinement or detention by law, although it was during the running of the contract of hire, no improper act of the master having prevented the libellant from performing his duties and fulfilling his agreement. The claim for wages for the time subsequent to the arrest of the libellant is accordingly dismissed. But I think the libellant is entitled to recover his wages to that period. Admitting that the maritime law applies to vessels moored at a wharf in a home port, and that seamen so situated are subject to all its penalties, I do not regard this as a case for the forfeiture of wages, under the principles of that law; and it is not attempted to bring the case within the provisions of the fifth section of the act of July 20, 1790 (1

Stat. 133). It seems to be a very rational restriction of the maritime rule of forfeiture of wages, that it shall not, unless made so by positive law, be in all cases one of total confiscation, and, particularly, that it need not be used to supply the master with a double mode of punishment. When he exercises his authority, and subjects a seaman to confinement or to corporal punishment, or delivers him over to the municipal law, for acts of disobedience or misconduct, he should not be enabled to superadd a forfeiture of wages for the same offence. Thorne v. White [supra]. The spirit of this benign principle has been practically applied in cases of mutinous conduct, for which a conviction on indictment had actually been had. The Mentor [Case No. 9,427]. The conduct of the libellant in this case was disorderly and inexcusable; but I think the course adopted by the master, of delivering him up to be dealt with by the civil authority here, and his actual confinement in prison for a fortnight on the charge, an adequate punishment, and I do not feel required to adjudge the forfeiture of the balance of his wages as an additional punishment. It may probably rest in the discretion of the court, either to mulct the libellant for the act, or to subtract his entire wages, or to discharge him from all other punishment than what he has already received therefor. The latter alternative, I think, meets the justice of the case. Accordingly, I shall decree that he recover $5.50, the sum unpaid, for his month's services. Costs will also be allowed to him, because his wages were never offered to him, and his right to recover them has been contested here. But, inasmuch as he has connected with his action for wages one for a personal tort, and that has induced the chief litigation and expense in the cause, and as the latter action was wholly groundless, it is just that he should bear the expenses thus created by himself. It is a common course of proceeding at common law, to apportion costs in this manner, and impose on a suitor successful in part, the charges induced by him in coupling other unsuccessful matters with his action or defence (Grah. Prac. 584, 585; Waddington v. United Ins. Co., 17 Johns. 23); and it is the practice of the court of chancery to do so (Vancouver v. Bliss, 11 Ves. 458). This court, in the like exercise of an eminent equity jurisdiction, feels constrained to observe those persuasive principles of common justice, upon which the practice in respect to costs is founded. The Apollo, 1 Hagg. Adm. 319.

A decree must be entered, that the libellant recover $5.50 for his wages, and his costs, and that he pay to the respondent his costs to be taxed, and that the libellant's wages and costs be set off against the respondent's costs, and that the party to whom the balance, if any, is due, have process against the other party for the recovery of such balance.

THOMAS (GREY v.) See Case No. 5,806.